```
UNITED STATES DISTRICT COURT
   DISTRICT OF CONNECTICUT
```
------------------------------------------------------------ x
ALEX GLOSSIAN,                                               :
                                                             :
                                    Plaintiff,               :
                                                             :
                    v.                                       :    24-CV-1406 (SFR)
                                                             :
SOUTHINGTON POLICE DEPARTMENT, ET AL.,                       :
                                                             :
                                    Defendants.              :
------------------------------------------------------------ x

## MEMORANDUM AND ORDER

Before the Court is a Motion to Dismiss Plaintiff Alex Glossian's Sixth Amended Complaint by the Town of Southington, Southington Police Department, and Officer Kevin Naranjo (the "Southington Defendants"). I have reviewed Glossian's Sixth Amended Complaint, ECF No. 25 ("Am. Compl."), the Southington Defendants' Motion to Dismiss and accompanying Memorandum, ECF No. 31, and Glossian's Opposition to the Motion to Dismiss, ECF No. 35. For the reasons stated below, I grant the motion to dismiss with leave for Glossian to file an amended complaint that addresses the deficiencies identified in this Opinion.

### I.   BACKGROUND

####    A.   Factual Background

This Amended Complaint arises out of several incidents involving Glossian, the Southington Police Department ("SPD"), and the Ward family. The Amended Complaint contains numerous, disjointed factual allegations spanning a number of events over the course of several years. I summarize here only those factual allegations in the Amended Complaint relevant to the motion to dismiss. For the purpose of the motion to dismiss, I take all well-

1

pleaded factual allegations in the Amended Complaint as true. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

### 1.  Involuntary Commitment

On April 22, 2022, Glossian and Kayla Ward were awoken by a crisis prevention team, allegedly called by a member of the Ward family who claimed that Glossian was "hearing voices to hurt himself" that day. Am. Compl. 1. Glossian denies that he "mentioned any harmful or suicidal remarks" to the Ward family. *Id.* Southington Police Officer Vernali apparently responded to the call. *Id.*

Glossian further states that he was then transported and involuntarily committed to New Britain Hospital and then St. Vincent's Hospital in accordance with Conn. Gen. Stat. § 17a-503. *Id.* at 1-2 ("Plaintiff transported to New Britain hospital . . . under false 503 to be transported to ST. Vincents hospital for 14 days of illegal seizure"). Glossian claims that Vernali conducted this transportation under false pretenses and without informing Glossian that he was, in fact, being committed for psychiatric care. *Id.*

### 2.  Loss of Service Dog and Trespassing Charge

Glossian adopted his psychiatric service dog, Savage, in 2018. *Id.* at 4. At some point, Glossian alleges he was "evicted" by the Ward family, with whom he had been living since January 2020. *Id.* at 1.[1] As a result, he apparently left Savage with the Ward family under "verbal agreement" that he would allow them to "watch savage" because Glossian "is not allowed to regain possession of savage." *Id.* at 4. Glossian was apparently charged with criminal trespassing "at some point" while attempting to see Savage. *Id.*

---

[1] Glossian seems to say he was evicted "sometime around early 2023," Am. Compl. 1. However, he later appears to say that he left Savage with the Ward family on November 8, 2022. *Id.* at 4.

### 3. Arrest for Attempted Burglary and Illegal Possession of Weapon in Motor Vehicle

Glossian apparently attempted to see Savage on a different occasion and, on June 5, 2023, was arrested for "[f]elony attempted burglary and illegal possession of weapon in motor vehicle" by several officers of the Southington Police Department, including Officer Kevin Naranjo, who allegedly said he discovered a knife in Glossian's vehicle. *Id.* at 7, 10. Glossian claims that in fact there was no knife in his vehicle, and that Naranjo lied about the presence of the knife. *Id.* at 7.

Glossian was also charged with violation of a protective order at some point, although the provenance of this order and the circumstances that led to the charge are unclear. *Id.* at 11.[2]

### B. Procedural History

Glossian originally filed this case in Connecticut Superior Court on June 8, 2023. It was first removed to this Court on June 29, 2023, because the original Complaint alleged federal civil rights violations. *See Glossian v. Southington Police Dept. et al,* No. 3:23-cv-00862-VDO, ECF No. 1 (D. Conn. Dec. 15, 2023). On November 29, 2023, the Court ordered Glossian to submit a statement as to whether he intended to pursue any federal claims. *Id.*, ECF No. 16. Glossian responded that he intended to pursue only remedies under state law, and the case was remanded to state court. *Id.*, ECF No. 17, 18.

---

[2] According to the Connecticut Judicial Branch website, Glossian pleaded *nolo contendere* to the attempted burglary charge and the violation of protective order charge on November 12, 2024. *See Criminal/Motor Vehicle Convictions Name Summary*, State of Connecticut Judicial Branch, https://www.jud2.ct.gov/crdockets/SearchByDefDisp.aspx (last accessed 12/21/25). The Judicial Website notes June 5, 2023 as the date of offense for the attempted burglary charge and October 2, 2023 as the date of offense for the protective order. I may take judicial notice of matters of public record. *See, e.g., Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006).

3

Once remanded, Glossian pursued new claims under federal law and the Southington Defendants again removed to this court on August 30, 2024, initiating the current action. ECF No. 1. After the initiation of the case, Glossian filed numerous motions for leave to amend his complaint. ECF Nos. 11, 16, 18, 19, 24. The Court[3] allowed Glossian to amend his complaint but required that he file a single amended complaint and warned him that this complaint would be his final amended complaint. ECF Nos. 14, 23. Glossian filed his Sixth Amended Complaint, the current operative complaint, on December 17, 2024. ECF No. 25. The case was transferred to me on January 6, 2025. ECF No. 28. The Southington Defendants filed a Motion to Dismiss the Sixth Amended Complaint on January 13, 2025. Defs.' Mem., ECF No. 31. Glossian filed a response on January 22, 2025. Pl.'s Mem., ECF No. 35.

Since that time, Glossian has continued to file motions for leave to amend his complaint and related matters. ECF Nos. 34, 39, 49, 55, 57, 62, 72. On August 25, 2025, I ordered Defendants to file a notice indicating whether they consented to Glossian's additional motions to amend; they responded on August 29, 2025 that they did not consent. ECF Nos. 47, 58. Glossian has also filed a flurry of motions related to discovery and other matters, which the court referred to Judge Garcia for resolution. ECF Nos. 37, 38, 45, 51, 60, 68, 69, 70, 71, 73, 81, 83, 84, 86, 88, 89.

## II. **LEGAL STANDARD**

The standard governing motions to dismiss under Rule 12(b)(6) is well established. A complaint may not survive unless it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

---

[3] The Honorable Omar A. Williams presided over this action before it was transferred to me.

4

(citation and internal quotation marks omitted); *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018); *Lapaglia v. Transamerica Cas. Ins. Co.*, 155 F. Supp. 3d 153, 155 (D. Conn. 2016). Although this plausibility requirement is not akin to a "probability requirement," it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. The court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber*, 648 F.3d at 104 (citation and internal quotation marks omitted). However, the court is not bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions," *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008).

Additionally, "[*p*]*ro se* submissions are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (per curiam)).

### III.   DISCUSSION

Glossian purports to bring a number of claims against the Southington Defendants, including claims under 42 U.S.C. § 1983 that he has categorized as illegal seizure claims under the Fourth Amendment and claims for malicious prosecution. I note, at the outset, that Glossian's brief is disjointed, with a difficult-to-follow timeline and overlapping events and claims. I construe his Amended Complaint liberally and assume all of his well-pleaded factual allegations as true for the purpose of the motion to dismiss.

Counts 1, 3, and 4 are all labeled as claims for "violation of Plaintiffs fourth amendment rights as secured by 42 U.S.C. § 1983 for Illegal Seizure." Am. Compl. 1, 7. Counts 6 and 7 are labeled as claims for "violation of Plaintiffs fourth Amendment rights as secured by 42

5

U.S.C. § 1983 for Malicious Prosecution." *Id.* at 10, 11. Counts 1 and 3 are brought against the Town of Southington and the Southington Police Department. Counts 4, 6, and 7 are brought against the Town of Southington, the Southington Police Department, and Officer Kevin Naranjo. Counts 2 and 5 are against the Ward Defendants, who are not parties to the instant motion to dismiss, and therefore I will not address those Counts here. *Id.* at 3, 10.

Count 1 appears to be a claim for illegal seizure stemming from an incident in which Glossian was involuntarily committed to psychiatric care in accordance with Conn. Gen. Stat. § 17a-503. *Id.* at 1. Count 3 appears to be an illegal seizure claim related to the loss of Glossian's service dog, Savage. *Id.* at 6-7. Count 4 is an illegal seizure claim related to Glossian's arrest on June 5, 2023 for "Felony attempted burglary and illegal possession of weapon in motor vehicle." *Id.* at 7.

Count 6 is a claim for malicious prosecution for attempted burglary under § 1983. *Id.* at 10. Count 7 is a claim for malicious prosecution for violation of a protective order under § 1983. *Id.* at 10-11.

### A. Claims Against Southington Police Department

As an initial matter, Glossian brings several claims against the Southington Police Department. However, police departments are not entities subject to suit under § 1983. *See Nicholson v. Lenczewski*, 356 F. Supp. 2d 157, 164 (D. Conn. 2005) (holding that "a municipal police department . . . is not a municipality nor a 'person' within the meaning of Section 1983"). Because the Southington Police Department is therefore not subject to suit under § 1983, Glossian's claims in Counts 1, 3, 4, 6, and 7 against the Department are therefore dismissed with prejudice.

### B.  *Monell* Claims Against the Town of Southington

"A municipality is only subject to liability under § 1983 when the violation of the plaintiff's federally protected right is attributable to the enforcement or execution of a municipal policy, practice, or custom." *Li v. Connecticut*, No. 3:22-cv-00996 (VAB), 2022 WL 3347220 (D. Conn. Aug. 11, 2022), at 21 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).

A plaintiff may demonstrate a government "policy or custom" by alleging "the existence of (1) a formal policy; (2) actions taken or decisions made by final municipal policymakers that caused the violation of plaintiff's rights; (3) a practice so persistent and widespread that it constitutes a custom or usage and implies the constructive knowledge of policymakers; or (4) a failure to properly train or supervise municipal employees that amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact." *Gomez v. City of Norwalk*, No. 3:15-CV-01434 (MPS), 2017 WL 3033322, at *3 (D. Conn. July 17, 2017) (internal quotation marks omitted); *accord Jenkins v. City of Hartford*, No. 3:22-cv-01289 (KAD), 2024 WL 1157342, at *4 (D. Conn. Mar. 18, 2024). Under *Monell*, a municipality can face suit under § 1983 only if its "failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006). Furthermore, "plaintiffs must show that the official policy, practice or custom was the 'moving force [behind] the constitutional violation,' which is to say that it actually *caused* the constitutional deprivation." *Hernandez v. Conn. Ct. Support Servs. Div.*, 726 F. Supp. 2d 153, 156-57 (D. Conn. 2009) (emphasis in original) (citations omitted). "[A] *Monell* claim cannot succeed without an independent constitutional violation." *Anilao v. Spota*, 27 F.4th 855, 874 (2d Cir. 2022).

7

Glossian argues that the violations claimed in Counts 1 and 4[4] of his Amended Complaint are attributable to the Town of Southington because the Town maintains a pattern of "failure to supervise [and] failure to discipline" its officers, specifically by failing to respond to a complaint Glossian made in 2024. *See* Am. Compl. 2, 8. He further alleges a "failure of record keeping" and a failure to respond to his FOIA requests show "a pattern across the entire Southington police department of all types of conduct." *Id.* at 2-3, 8-9.

The Southington Defendants argue that Glossian has failed to establish any viable *Monell* claim because his allegations are conclusory recitations of the *Monell* standard, without any evidence of similar complaints that could put Defendants on notice about the "propensity of their officers to engage in the kind of misconduct alleged by plaintiff here." Defs.' Mem. 14 (quoting *Adams v. City of New Haven*, 3:14-cv-00778 (JAM), 2015 WL 1566177, at *6 (D. Conn. Apr. 8, 2015)).

I agree with Defendants.

In order for municipal liability to attach under § 1983, the municipality's failure to train, supervise, or discipline its employees "must amount to 'deliberate indifference to the rights of persons with whom the [employees] come into contact.'" *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)); *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007) ("*Monell*'s policy or custom requirement is satisfied where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly

---

[4] Glossian does not make separate *Monell* arguments in his other claims against the Town of Southington but instead incorporates by reference the allegations from Counts 1 and 4. I will therefore consider those arguments with regard to Counts 3, 6, and 7.

authorized its subordinates' unlawful actions."); *Jenkins*, 2024 WL 1157342, *7. "Only where a failure to train[, supervise, or discipline an employee] reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—can a city be liable for such a failure under § 1983." *City of Canton*, 489 U.S. at 389. "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997) (internal quotation marks omitted). Without evidence of a pattern of similar violations to provide notice that a course of action is deficient, "decisionmakers can hardly be said to have deliberately chosen a [policy] that will cause violations of constitutional rights." *Connick*, 563 U.S. at 62.

Here, Glossian has not pleaded sufficient facts to meet the stringent standard for deliberate indifference for his failure-to-train claim. He alleges no specific instance or theory regarding the alleged failure to train, instead vaguely asserting that the Town did not properly train its officers. *See Jenkins*, 2024 WL 1157342, at *6-7 (dismissing *Monell* failure-to-train claim where plaintiff made "only general and wholly conclusory allegations regarding [police] training").

Glossian also alleges no facts to show that any municipal actor knew of any risk of unconstitutional action related to supervision, discipline, or the Town's FOIA practices, let alone a pattern of any such actions. Instead, Glossian makes conclusory allegations that the Town simply is "held responsible" for his alleged violations because they failed to respond to his "complaint made on 6/26/24" and his multiple FOIA requests for police records "dating beginning of October 2024." Am. Compl. 2, 8. Glossian does not reference any prior "complaints of civil rights violations that would have put defendants on notice about the

9

propensity of their officers to engage in the kind of misconduct alleged by plaintiff here," *Pierce v. Town of Simsbury*, No. 3:20-cv-01766 (VAB), 2022 WL 4291389, at *5 (D. Conn. Sept. 16, 2022), nor does he allege any causal relationship between the failure to supervise and the alleged deprivation, *Riccio v. Town of Old Saybrook*, No. 3:21-CV-821 (SVN), 2022 WL 4585650, at *3 (D. Conn. Sept. 29, 2022).

Glossian provides no effective response in his opposition, simply repeating his conclusory allegation that he has effectively made a claim under *Monell* with no additional explanation. Pl.'s Mem. 5-6.

For these reasons, I find that Glossian has failed to state any § 1983 claim under the *Monell* standard against the Town of Southington in Counts 1, 3, 4, 6, and 7.

### C. Claims Against Officer Naranjo

Glossian asserts claims against Officer Kevin Naranjo of the Southington Police Department "in his individual and official capacity," in Counts 4, 6, and 7.

#### 1. Malicious Prosecution Claims: Counts 6 and 7

In Count 6, Glossian asserts a § 1983 Fourth Amendment claim against Naranjo for malicious prosecution for attempted burglary. In Count 7, Glossian asserts a § 1983 Fourth Amendment claim against Naranjo for malicious prosecution for violation of a protective order.

To prevail on a § 1983 claim of malicious prosecution, a plaintiff must prove that "(1) the defendant initiated or continued criminal proceedings against the plaintiff; (2) the criminal proceeding terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice." *Conroy v. Caron*, 275 F. Supp. 3d 328, 348 (D. Conn. 2017) (internal quotation marks omitted). In addition, a plaintiff must show a "sufficient post-

arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights," which can be established through a requirement to return to court post-arraignment. *Rohman v. New York City Transit Auth. (NYCTA)*, 215 F.3d 208, 216 (2d Cir. 2000).

"An arresting officer may be held liable for malicious prosecution if he or she played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." *Barone v. United States*, No. 12 Civ. 4103, 2014 WL 4467780, at *17 (S.D.N.Y. Sept. 10, 2014) (internal quotation marks omitted). "In addition, an officer will be liable for malicious prosecution if he or she creates false information likely to influence a jury's decision and forwards that information to prosecutors, or . . . withholds relevant and material information from the prosecutor." *Id.* (internal quotation marks omitted).

"[C]ourts must engage in a charge-by-charge approach in determining whether the favorable termination element is satisfied for a malicious prosecution claim." *Carruthers v. Colton*, 153 F.4th 169, 185 (2d Cir. 2025). Here, Glossian's claims for malicious prosecution for attempted burglary and violation of a protective order must be dismissed because he does not allege favorable termination of these charges. Instead, Glossian acknowledges that he pleaded *nolo contendere* to the attempted burglary and violation of a protective order charges, a fact that publicly available records confirm. Pl.'s Mem. 6.[5] Courts in this district have concluded that a plea of *nolo contendere* (or no contest) does not constitute a favorable termination for purposes of a malicious prosecution claim. *See, e.g.*, *Mendes v. Cunningham*,

---

[5] Criminal/Motor Vehicle Convictions Name Summary, State of Connecticut Judicial Branch, https://www.jud2.ct.gov/crdockets/SearchByDefDisp.aspx (last visited December 21, 2025).

11

No. 3:21-cv-1527 (JAM), 2022 WL 2104515, at *2 (D. Conn. June 10, 2022); *Greene v. Wright*, 389 F.Supp.2d 416, 429 (D. Conn. 2005).

In his Opposition, Glossian asserts that he requested post-conviction relief in state court for these convictions nearly a year ago. However, he does not allege that such relief was granted. Pl.'s Mem. 6. Accordingly, Counts 6 and 7 against Naranjo are dismissed without prejudice. *See Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995) (dismissing appeal of dismissal of § 1983 claims for false arrest, false imprisonment, and malicious prosecution where the plaintiff "has not demonstrated that his conviction has been invalidated in any manner"). Should Glossian's convictions for attempted burglary and violation of the protective order be vacated at some later point in time, he could assert malicious prosecution claims at that time. *See Beckwith v. City of Syracuse*, 642 F. Supp. 3d 283, 290 (N.D.N.Y. 2022) (holding that appellate reversal of plaintiff's conviction constituted favorable termination for the purpose of a malicious prosecution claim) (citing *Thompson v. Clark*, 596 U.S. 36 (2022)).

    **2.    Count 4**

In Count 4, Glossian asserts that Naranjo violated his Fourth Amendment rights "for illegal seizure" and references his arrest on June 5, 2023 for "attempted burglary and illegal possession of weapon in motor vehicle." Am. Compl. 7. I liberally construe Count 4 as asserting false arrest in connection with Glossian's June 5, 2023 arrest.

To state a false arrest claim under § 1983 in Connecticut, a plaintiff must not only plead facts to satisfy the elements of a false arrest claim under Connecticut law but must also plead facts to demonstrate "an unreasonable deprivation of liberty in violation of the Fourth Amendment." *Walker v. Sankhi*, 494 F. App'x 140, 142 (2d Cir. 2012) (summary order). "Under Connecticut law, false arrest and false imprisonment claims require pleading and proof

12

of the same four elements." *Arpino v. Spera*, No. 3:22-cv-01114 (KAD), 2022 WL 21751856, at *4 (D. Conn. Sept. 22, 2022), *report and recommendation approved and adopted,* slip op. (D. Conn. Nov. 9, 2022). "The elements of such a claim under Connecticut law are: (1) the defendant arrested plaintiff or had plaintiff arrested; (2) the plaintiff was aware of the arrest; (3) there was no consent for the arrest; and (4) the arrest was not supported by probable cause." *Chase v. Nodine's Smokehouse, Inc.*, 360 F. Supp. 3d 98, 112 (D. Conn. 2019).

Here, Glossian acknowledges he was convicted of attempted burglary. Even if there was no probable cause to arrest Glossian for the charge of illegal weapon in a motor vehicle, a false arrest claim based on the June 5, 2023 arrest is defeated by Glossian's conviction for the attempted burglary charge. A plaintiff's conviction for an offense for which he was arrested, in general, conclusively establishes the existence of probable cause for his arrest. *See, e.g.*, *Wingate v. Gives*, 725 F. App'x 32, 35 (2d Cir. 2018) (summary order) (plaintiff's "conviction for possession of a controlled substance established probable cause"); *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (noting conviction is generally "conclusive evidence" of probable cause, so long as the conviction survives appeal). Indeed, Glossian does not appear to assert that probable cause was lacking for his arrest for attempted burglary. Moreover, "[i]f there is probable cause to arrest a plaintiff for *any* crime—whether or not that particular crime was closely related to the offense the officers said was the reason for the arrest—then a plaintiff cannot prevail" on a false arrest claim. *Alexander v. City of Syracuse*, 132 F.4th 129, 156 (2d Cir. 2025) (internal quotation marks omitted); *see also Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006) ("[W]e conclude here that a claim for false arrest turns only on whether probable cause existed to arrest a defendant, and that it is not relevant whether probable cause existed with respect to each individual charge").

Notably, Glossian's Amended Complaint does not assert a claim for malicious prosecution based on the illegal possession of a weapon in a motor vehicle charge. Should Glossian wish to pursue such a claim, he would need to allege facts supporting the elements for a malicious prosecution claim. In particular, Glossian must allege that "(1) the defendant initiated or continued criminal proceedings against the plaintiff; (2) the criminal proceeding terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice." *Conroy*, 275 F. Supp. 3d at 348. In addition, Glossian must allege a "sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights," which can be shown through a requirement to return to court post-arraignment. *Rohman*, 215 F.3d at 216.

Here, it is not clear from the Amended Complaint if Glossian was ever charged in court with illegal possession of a weapon in a motor vehicle and, if so, the outcome of any proceeding relating to this charge. Moreover, as the complaint does not clearly assert a claim of malicious prosecution based on the illegal possession of a weapon in a motor vehicle charge, Naranjo has not had an opportunity to respond to this claim.

In addition, although Glossian asserts in his Amended Complaint that no weapon was found in his car and the "weapon was planted," it is not clear from Glossian's Amended Complaint whether he is pursuing a claim for denial of the right to a fair trial based on fabricated information. To pursue such a claim, he must show "an (1) investigating official (2) fabricate[d] evidence (3) that [wa]s likely to influence a jury's decision, (4) forward[ed] that information to prosecutors, and (5) the plaintiff suffer[ed] a deprivation of liberty as a result." *Jovanovic v. City of New York*, 486 F. App'x 149, 152 (2d Cir. 2012) (summary order) (citing *Jocks v. Tavernier*, 316 F.3d 128, 138 (2d Cir. 2003); *Ricciuti v. N.Y.C. Transit Auth.*, 124

14

F.3d 123, 129-30 (2d Cir. 1997) (noting that allegedly fabricated admissions caused the plaintiffs to be charged with a more serious crime and delayed their opportunity to be freed on bail). Notably, probable cause for an underlying arrest is not a defense to a claim for a denial of the right to a fair trial based on fabricated evidence. *See Garnett v. Undercover Officer C0039*, 838 F.3d 265, 277-78 (2d Cir. 2016).

Glossian states in his Opposition that he spent time "incarcerated with a specific bond amount due to the fabricated weapon that was planted for evidence." Pl.'s Mem. 7. However, Glossian did not allege these specific facts in his Amended Complaint. More generally, Glossian's Amended Complaint did not put Naranjo on notice of a fabricated evidence claim as required by Federal Rule of Civil Procedure 8, and Naranjo has not responded to such a claim. Glossian may attempt to allege a claim for fabrication of evidence if he files another amended complaint. If he asserts such a claim, he must allege facts satisfying the requirements set forth in this Opinion.

I therefore grant the Motion to Dismiss Defendant Officer Naranjo from this action but grant Glossian leave to file an Amended Complaint against Naranjo.

### D.    Ability to Replead

The Southington Defendants argue that I should not grant Glossian an opportunity to replead because "the issues with [Glossian's] pleading . . . are substantive in nature, and there is no manner by which [Glossian] will be able to replead his claims such that they no longer fail as a matter of law." Defs.' Mem. 20. Further, they argue that Glossian has already filed more than six revised complaints and has thus had ample opportunity to properly plead his claims. *Id.*

I do not agree. The Southington Police Department is, indeed, not subject to suit. However, Glossian could conceivably replead with sufficient facts to establish municipal liability under *Monell* or a claim against Naranjo for fabrication of evidence or malicious prosecution based on the illegal possession of a weapon in a motor vehicle charge. Moreover, because Glossian is *pro se*, and because the usual practice when granting a motion to dismiss is to allow for repleading, justice here requires that Glossian be permitted one additional attempt at repleading. Although it is true that Glossian has filed numerous previous motions to amend his complaint, he has done so largely on his own initiative and without the benefit of this court's order. Therefore, justice requires that I grant Glossian a final attempt to amend his complaint.

### E.    Outstanding Motions to Amend

In light of the forgoing order, I note that Glossian has seven outstanding motions which relate to amending his complaint. ECF No. 34, 39, 49, 55, 57, 62, 72. These motions are hereby denied without prejudice pending Glossian's filing of one final, consolidated motion to amend.

### F.    Motion to Appoint Counsel

Glossian has also filed a Motion to Appoint Counsel. ECF No. 53. Because civil litigants do not have a constitutional right to the appointment of counsel, a court's decision to appoint *pro bono* counsel is discretionary. *Leftridge v. Conn. State Trooper Officer No. 1283*, 640 F.3d 62, 68-69 (2d Cir. 2011); *Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986). The Second Circuit has cautioned the district courts against the "routine appointment of counsel." *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 173-74 (2d Cir. 1989).

Before an appointment of *pro bono* counsel for an indigent litigant is considered, the court must "determine whether the indigent's position seems likely to be of substance." *Hodge*,

802 F.2d at 61; *see also Cooper*, 877 F.2d at 171. If the claims are sufficiently meritorious, the court should then consider other factors bearing on the need for appointment of counsel, including the movant's ability to investigate the factual issues of the case, whether conflicting evidence implicating the need for cross-examination will be the major proof presented, the movant's apparent ability to present the case, and the complexity of the legal issues involved. *See Hodge*, 802 F.2d at 61-62.

At this stage of the case, I cannot justify requiring a private attorney to volunteer their time and effort for this case. Accordingly, I deny Glossian's motion for appointment of counsel without prejudice.

### G. Other Motions and Stay of Discovery

Glossian has also filed several other miscellaneous motions, including several related to discovery, summary judgment, and other deadlines. ECF Nos. 79, 92, 94, 95, 96, 97, 98. These motions are all denied without prejudice pending Glossian filing a final amended complaint.

In the interest of judicial efficiency, I also stay all pending deadlines and all discovery in this case. If Glossian does not successfully replead any of his federal claims against the Southington Defendants, there will be no remaining federal claims in the complaint, and I would likely remand the remaining claims back to state court. *See Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 35, 39 (2025) (holding that, without federal claims, "federal-question jurisdiction dissolves . . . , supplemental jurisdiction over the residual state claims disappears as well"); *see also Davis v. Horton*, No. 23-cv-00885 (JPC) (VF), 2025 WL 539658, at *9 (S.D.N.Y. Jan. 27, 2025) (citing *Wullschleger* to support proposition that when court is

17

deprived of federal-question jurisdiction it will also lose any supplemental jurisdiction over state law claims).

## IV.  CONCLUSION

For the foregoing reasons, I grant the Southington Defendants' motion to dismiss Glossian's Sixth Amended Complaint.

Glossian shall, on or before **February 9, 2026**, file an amended complaint addressing the issues identified in this opinion. Glossian shall file his complaint as one single document and may not file additional amended complaints. If Glossian files more than one amended complaint, I will only accept the first filed amended complaint.

Glossian's pending motions to amend and related motions, motion to appoint counsel, miscellaneous motions, motions related to deadlines, and motions related to discovery ECF Nos. 34, 39, 49, 53, 55, 57, 62, 72, 79, 92, 94, 95, 96, 97, 98, are hereby denied without prejudice.

Discovery is stayed pending the Southington Defendants' response to the Seventh Amended Complaint. If the Southington Defendants file an Answer, discovery will resume at that time. If the Southington Defendants file another Motion to Dismiss, discovery will be stayed until the court resolves that Motion.

**SO ORDERED.**

New Haven, Connecticut
January 9, 2026

/s/*Sarah F. Russell*
SARAH F. RUSSELL
United States District Judge